UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 07 B 15979 |
| | ) | |
| PHILLIP AND DIANA RAE MADER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Judge Pamela S. Hollis |

## MEMORANDUM OPINION

This matter comes before the court on the Objection to Amended Claim By Internal Revenue Service filed by Phillip and Diana Rae Mader ("Debtors") on August 12, 2010. For the reasons stated below, the court sustains, in part, and overrules, in part, Debtors' Objection.

### JURISDICTION AND PROCEDURE

The court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### UNDISPUTED FACTS

Debtors filed a voluntary petition for Chapter 13 bankruptcy on August 31, 2007. On October 31, 2007, the Internal Revenue Service ("IRS") filed a proof of claim asserting a secured debt in the amount of $460,401.29 and an unsecured priority claim of $1331.30, for a total of $470,732.59. On January 13, 2010, Debtors voluntarily converted to Chapter 7 bankruptcy.

On June 25, 2010, the IRS filed an Amended Proof of Claim listing a secured claim of $310,523.64, an unsecured debt of $873,811.82, and $1331.30 as a priority unsecured debt, for a total of $1,185,666.76. The IRS's Amended Proof of Claim included Debtors' individual taxes as well as taxes owed by Phillip Mader Masonry, Inc. ("PMMI").

PMMI was an Illinois corporation formed by Phillip Mader ("Mr. Mader") on or about June 12, 1985. On November 1, 1986, the Illinois Secretary of State involuntarily dissolved PMMI for failing to file annual reports and failing to pay the annual franchise tax. Mr. Mader continued to operate the business under PMMI's name and filed corporate taxes until at least the year 2000.

The IRS assessed employment and income taxes in the name of PMMI from 1995 to 1999. In its Amended Proof of Claim, the IRS listed liabilities from PMMI's Form 941 assessments for tax periods ending 9/30/1997 through 9/30/1999, corporate income tax assessments for tax periods ending 6/30/1995, 6/30/1996, and 6/30/1997, and individual income tax assessments in the names of Debtors for 1995, 1996, and 1999.

The Form 941 assessments, corporate income tax assessments for tax period ending 6/30/1997, and the individual tax assessments for 1999 were based solely on returns filed by Debtors. Those taxes were not audited. The IRS's secured claim for $310,523.64 and its unsecured priority claim in the amount of $1331.30, were based entirely on self-reported liabilities. The remaining liabilities consist of Debtors' individual income tax assessments for 1995 and 1996 as well as corporate income taxes for tax periods ending 6/30/1995 and 6/30/1996 based on audits alleged to have been performed by the IRS.

On July 30, 2009, Debtors served a Notice to Produce on the IRS, requesting copies of any and all documents the IRS had used in its audit calculations. The IRS responded on September 22, 2009. The response explained that no correspondence sent to or received by the IRS in connection with an audit of Debtors' individual income taxes, PMMI's income taxes, or the Form 941 taxes exist in the United States' administrative files. The IRS also stated that no powers of attorney responsive to the request exist in the administrative files.

The IRS did produce the audit reports. The Income Tax Examination Changes ("ITECs") stated that the IRS issued Information Document Requests (IDRs) seeking information and that no responses were received, but the IRS stated in its response to Debtors' Notice to Produce that the IRS could find no IDRs. The ITECs indicated that an IRS agent visited the tax preparer during the audits.

In 2006, the Taxpayer Advocacy Office indicated to Mr. Mader that he was liable only for his individual tax liabilities and for PMMI's Form 941 tax liabilities, but not PMMI's corporate income taxes.

## DISCUSSION

Debtors raise a number of objections. Debtors argue that they are not personally liable for the taxes incurred in the operation of PMMI because the IRS never assessed PMMI's taxes against them individually and the IRS is now barred by the statute of limitations from assessing PMMI's taxes against them. Debtors further argue that even if they are liable for PMMI's taxes, those taxes must be recalculated to reflect liability as individual taxpayers, not as a corporation. Finally, Debtors argue that there is insufficient evidence to support the IRS's contention that the audits took place.

### I. PMMI's Taxes

The court must first determine if Debtors were personally liable for the taxes incurred in the operation of PMMI.

#### A. Individual Liability for PMMI's Taxes

The IRS argues that Mr. Mader was an employer as defined in 26 U.S.C. § 3401(d). The IRS argues that Mr. Mader admitted he operated the business functionally as a sole proprietorship and contends that Mr. Mader cannot avoid payment simply by filing tax returns

3

under the name of a fictitious entity. Debtors respond that the IRS must make adjustments to the calculation of the employment taxes if PMMI is not the employer, but that there is no case law to support Mr. Mader as an employer.

26 U.S.C. § 3401(d) defines employer as "the person for whom an individual performs or performed any service, of whatever nature, as the employees of such person[.]" Section 3401(d)(1) explains that "if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' . . . means the person having control of the payment of such wages[.]" 26 U.S.C. § 3401(d)(1).

In their reply, Debtors do not respond to the factual allegations that Mr. Mader was the employer, but instead attack the legal basis of the IRS's argument—that the IRS does not explain why it is switching from claiming PMMI was the employer to Mr. Mader, why the Amended Proof of Claim does not make adjustments to the calculation of the taxes to reflect Mr. Mader as the employer, and that § 3401(d) does not contain any language allowing the IRS to assess the taxes after three years. In essence, Debtors do not deny that Mr. Mader was the employer. Debtors simply obfuscate the issue by arguing that the IRS is arguing inconsistent positions and that § 3401(d) does not, itself, provide an exception to the statute of limitations. Neither of Debtors' arguments address whether Mr. Mader was, in fact, the employer.

Mr. Mader was clearly an employer under § 3401(d). PMMI was involuntarily dissolved in 1986 and from that point on no corporation existed. Although Mr. Mader may have operated the business as a corporation by paying corporate taxes and paying taxes on dividends, Mr. Mader was really operating his own business, a sole proprietorship. Mr. Mader filed corporate taxes on behalf of PMMI and, although the parties submitted no evidence concerning the manner

4

in which wages were paid to employees, it stands to reason that Mr. Mader, as the individual in control of PMMI's financial affairs, also controlled the payment of wages to employees. All the information before the court indicates that Mr. Mader was fully in control of PMMI's operations. *See Kittlaus v. United States*, 41 F.3d 327, 330 (7th Cir. 1994) (holding that the management agent, not the partnership, was the employer where the management agent exercised a great degree of control over all facets of business's operation including the exclusive right to hire, discharge, set wages, and administer payroll and disbursement of those wages). Thus, Mr. Mader is determined to have been the employer under § 3401(d). For this reason, Mr. Mader is responsible for the entirety of the tax liability incurred in the operation of PMMI.

B. Alter Ego Theory

The IRS contends that Mr. Mader was the alter ego of PMMI. This argument has no merit because it applies only when there is a corporate veil to pierce. PMMI was involuntarily dissolved in 1986. After that, no corporation legally existed and the only entity that existed to incur liability was Mr. Mader himself.

C. Statute of Limitations and Estoppel

Debtors argue that the corporate income taxes and Form 941 taxes were never assessed against them and that those taxes cannot now be assessed against them because assessment is barred by the statute of limitations. The IRS argues that Debtors have refused to make accommodations that would facilitate an amendment of the calculations, which they decline to recalculate because, arguably, Debtors' filing of individual tax returns triggered the statute of limitations. The IRS also claims that Debtors are estopped from asserting that PMMI was not a corporation for tax purposes.

As discussed above, Mr. Mader was the employer for tax purposes. After November 1, 1986, PMMI was no longer a corporation. The entity liable for income and employment taxes was Mr. Mader. The IRS points to no law which states that it can tax a sole proprietorship as a corporation where no such election was made. The IRS's only argument to support its position is that Debtors are estopped from asserting Mr. Mader's status as a sole proprietor.

i. *Estoppel*

One claiming estoppel must show that: (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that they were untrue; (3) the party claiming estoppel did not know the representations were untrue when made and when the party acted in reliance upon the representations; (4) the other party intended or reasonably expected that the party claiming estoppel would rely on the representations; (5) the party claiming estoppel reasonably relied upon the representations to its detriment; and (6) the party claiming estoppel would be prejudiced by its reliance if the other party were permitted to deny the truth thereof. *DeLuna v. Burciaga*, 857 N.E.2d 229, 249 (Ill. 2006) (citing *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001)). The representation does not have to be fraudulent in the strict legal sense or even done with intent to mislead or deceive. *Geddes*, 751 N.E.2d at 1157 (citation omitted).

The IRS must show detriment to succeed. The IRS argues that it reasonably relied on PMMI's returns to its detriment to the extent the tax liabilities are treated as void. Presumably the IRS means to say that it would be disadvantaged because it would be unable to collect any taxes arising from the operation of PMMI, a non-entity, or from Mr. Mader, who was the employer. This is true only if the statute of limitations bars the IRS from assessing PMMI's taxes against Mr. Mader as a sole proprietor. Debtors filed taxes based on PMMI's operation as a

corporation. This raises the question of whether Debtors ever filed a tax return, given their inaccuracies.

1. Validity of Debtors' Tax Returns

The general rule is that a tax must be assessed within three years after a return was filed. 26 U.S.C. § 6501(a). If a taxpayer has not filed a return, the statute of limitations does not begin to run. 26 U.S.C. 6501(c)(3). *See also Comm'r of Internal Revenue v. Lane-Wells Co.*, 321 U.S. 219, 222-24, 64 S. Ct. 511, 88 L. Ed. 684 (1944) (tax return must enough information for the IRS to determine the taxpayer's liability to commence the running of the statute of limitations). The statute of limitations on tax assessments is strictly construed in favor of the government. *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 392, 104 S. Ct. 756, 78 L. Ed. 2d 549 (1984).

If Debtors have not filed a tax return, the statute of limitations has not begun to run. Neither the Bankruptcy Code nor the Internal Revenue Code defines "return." *In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005). The Seventh Circuit case law has offered a definition, however. To qualify as a return, "a document filed with the IRS must (1) purport to be a 'return,' (2) be signed under penalty of perjury, (3) contain enough information to enable the taxpayer's liability to be calculated, and (4) 'evince[ ] an honest and genuine endeavor to satisfy the law.'" *Id.* (quoting *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180, 55 S. Ct. 127, 79 L. Ed. 264 (1934)). A return that fails to satisfy all four elements does not serve the purpose a tax return is intended to serve in our system of self-assessment. *Id.* "The purpose [of the return] is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Lane-Wells Co.*, 321 U.S. at 223. The general view is that only substantial

7

compliance is required to qualify as a return. *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033 (6th Cir. 1999).

The first two elements are obviously satisfied. Debtors filed individual tax returns and signed them under penalty of perjury. The IRS does not dispute this. However, given that no corporation existed, Debtors' tax returns clearly were not accurate or complete. This in and of itself does not render the tax returns void. The issue is whether those returns provided substantially enough information for the IRS to calculate Debtors' tax liability.

The information provided on Debtors' tax returns was not sufficient to allow Debtors' tax liability to be properly calculated. Debtors' tax returns included income only from "dividends" and "wages." The "dividends" should not have been treated as dividends, but wages. Debtors' returns also failed to include income earned in the operation of Mr. Mader's business which was reported separately on corporate income taxes. Thus, Debtors' reported income was inaccurate. Also, Mr. Mader was personally responsible for PMMI's income tax and employment tax for Mr. Mader's employees. The failure to include all this information renders Debtors' tax returns substantially inaccurate such that the IRS could not have properly determined their tax liability. *See Kempf v. Internal Revenue Serv. (In re Kempf)*, No. 86-0154, 1988 WL 1571438, at *5 (Bankr. S.D. Iowa Sept. 23, 1988) (sole proprietor who failed to report self-employment income on his individual tax returns did not start the running of the statute of limitations period because he did not file a return with enough information to compute the taxes). The court need not determine whether Debtors' tax returns were an "honest and genuine" attempt to satisfy the law since the third element is not met.

As Debtors have not filed tax returns, the statute of limitations has not begun to run. Likewise, estoppel is inapplicable since the IRS is not disadvantaged by Debtors'

representations. Therefore, the IRS is not barred from recalculating and assessing those taxes against Debtors.

Finally, Debtors argue that the IRS should be estopped from recalculating because the IRS was fully aware the corporation had been dissolved when they made their initial assessment. This allegation is baseless as Debtors were in the best position to know if PMMI was an involuntarily dissolved corporation and cannot be said to have reasonably relied on the IRS's categorization of PMMI as a corporation when Debtors themselves filed tax returns stating that PMMI was a corporation. Debtors are not innocent victims here.

Because the court holds that the IRS cannot hold Debtors responsible for corporate income taxes when no corporation existed, the court agrees with Debtors that the IRS's entire proof of claim must be disallowed since the individual taxes do not accurately reflect Debtors' tax liability.

Given that the IRS's Amended Proof of Claim is disallowed, the court need not address Debtors' arguments regarding the sufficiency of the evidence of the IRS audits, whether the IRS "assessed" PMMI's taxes against Debtors, or the validity of the Form 941 lien.

## CONCLUSION

For the foregoing reasons, Debtors' Objection to the IRS's Amended Proof of Claim is sustained and the Amended Proof of Claim is disallowed, without prejudice as to any potential recalculated proof of claim. To the extent Debtors argue they are not individually liable for the taxes incurred in the operation of PMMI, Debtors' Objection is overruled. This case is set for a status hearing on March 10, 2011.

Date: FEB 10 2011

ENTERED:

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge